IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **FIDELITY BANK.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 15-0031-WS-M |
| | ) |
| **KEY HOTELS OF BREWTON, LLC,** *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on the Motion of Fidelity Bank for *Ex Parte* Appointment of Receiver and Request for Expedited Hearing (doc. 6).

**I.    Relevant Background.**

Plaintiff, Fidelity Bank, commenced this action for enforcement of a loan agreement and security interest against defendants, Key Hotels of Brewton, LLC and Anand Patel, in this District Court on January 23, 2015.  The pleadings allege that Key Hotels (whose sole member is Patel) operates a Ramada Hotel (the "Hotel") in Brewton, Alabama, and that defendants are in default of certain loan repayment obligations to Fidelity Bank in the amount of $1,885,032.54.  The original Complaint asserted causes of action only for breach of the note and detinue, with plaintiff seeking a money judgment for defendants' indebtedness as well as a judgment for possession of the personal property collateral (*e.g.*, fixtures, equipment, furniture) at the Hotel.

Affidavits of Non-Service (docs. 3 & 4) reflect that plaintiff's process server attempted unsuccessfully to serve process on Patel at the Hotel.  In particular, those Affidavits state that the process server visited the Hotel address at 10:35 a.m. on the morning of January 28, 2015 and observed the following:  "Building is closed and under renovation.  Serve[r] spoke with workmen at the site and was told that they probably would not reopen before 6-8 months.  They did not know the whereabouts of Anand Patel."  (Doc. 4.)

On January 30, 2015, Fidelity Bank made a flurry of new filings in this case.  For starters, plaintiff filed a "First Amended Verified Complaint for Appointment of Receiver and Monetary

Relief" (doc. 5) adding a new cause of action for appointment of receiver, purportedly based on (i) plaintiff's rights under a Mortgage and Security Agreement executed by defendants; (ii) plaintiff's inspection of the Hotel on January 21, 2015 and its observations of the property's "dilapidated condition;" and (iii) an "Order of State Fire Marshal to Cease and Desist" Hotel operations on January 22, 2015 because of uncorrected fire code violations.  Along with the Amended Complaint, Fidelity Bank filed a "Motion for *Ex Parte* Appointment of Appointment of Receiver and Request for Expedited Hearing" (doc. 6) and accompanying Brief (doc. 7).  Plaintiff asserts that "[t]he immediate appointment of a receiver is necessary to protect the interests of Fidelity with respect to its collateral and to protect the welfare of the general public in that the Property has been declared a fire hazard."  (Doc. 6, ¶ 2.)  On that basis, Fidelity Bank "seek[s] *ex parte* relief on an emergency basis … [b]ecause of the extraordinary circumstances which appear to impact not only the protection of Fidelity's collateral, but also the risk to public safety."  (Doc. 7, ¶ 6.)

**II.     Analysis.**

The Court begins with the premise that "[a] district court's appointment of a receiver … is an extraordinary equitable remedy."  *United States v. Bradley*, 644 F.3d 1213, 1310 (11th Cir. 2011) (citation and internal quotation marks omitted).[1]  "[T]he appointment of a receiver in equity is not a substantive right; rather, it is an ancillary remedy which does not affect the ultimate outcome of the action."  *National Partnership Inv. Corp. v. National Housing Development Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998); *see also Hutchinson v. Fidelity Inv. Asss'n*, 106 F.2d 431, 436 (4th Cir. 1939) ("It should not be forgotten that the appointment of a receiver is not a matter of right, but one resting in the sound discretion of the court.") (citation omitted); *Sterling Sav. Bank v. Citadel Development Co.*, 656 F. Supp.2d 1248, 1258 (D. Or. 2009) (noting that "a party does not have a substantive right to a receiver").  Simply put, "[r]eceivership is an extraordinary remedy that should be employed with the utmost caution and is justified only where there is a clear necessity to protect a party's interest in property, legal and

---

[1]  *See also Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009) ("Under federal law, appointing a receiver is an extraordinary equitable remedy, which should be applied with caution.") (citations and internal quotation marks omitted).

less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties." *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012).[2]

Not only is Fidelity Bank requesting appointment of a receiver, but it is also requesting that such relief occur immediately on an *ex parte* basis, without Key Hotels and Patel being afforded notice or an opportunity to be heard. As a general proposition, *ex parte* emergency motions are disfavored in federal court. *See generally Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 438-39, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974) ("our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute"). More specifically, it is black-letter law that, in the receivership context, notice must ordinarily be given before appointment is made. *See, e.g., Arkansas Louisiana Gas Co. v. Kroeger*, 303 F.2d 129, 132 (5th Cir. 1962) ("[A]s a general rule a receiver should not be appointed without notice to the parties to be affected by the receivership."); *Solis v. Matheson*, 563 F.3d 425, 438 (9th Cir. 2009) ("In general, a receiver should not be appointed without notice being given."). Thus, the extraordinary nature of the receivership remedy is magnified and compounded when the movant seeks appointment of a receiver without notice to the property owner. *See, e.g., Maxwell v. Enterprise Wall Paper Mfg. Co.*, 131 F.2d 400, 403 (3rd Cir. 1942) ("The caution which should surround the appointment of a receiver is heightened when such appointment is sought peremptorily in a proceeding in which the opposition has neither notice nor opportunity to be heard."). As one court has observed, "[t]he appointment of a receiver, *ex parte,* and without notice, to take over one's property is one of the most drastic actions known to the law or equity." *In re Stanley Station Associates, L.P.*, 139 B.R. 990, 1004 (Bankr. D. Kan. 1992) (citation omitted).

---

[2] *See also Skirvin v. Mesta*, 141 F.2d 668, 673 (10th Cir. 1944) ("[T]he power to appoint a receiver with authority to take custody and control of property and operate it as a going concern is a delicate one which is jealously safeguarded, and it should be exerted sparingly. A court should be cautious and circumspect in the exertion of the remedy because perversion or abuse may work great hardship."); *Varsames v. Palazzolo*, 96 F. Supp.2d 361, 365 (S.D.N.Y. 2000) ("The appointment of a receiver is considered an extraordinary remedy and should be utilized only where clearly necessary to protect an interest by the plaintiff in property where the rights over that property are in dispute.").

That is not to say, however, that *ex parte* appointment of a receiver is never permissible. To the contrary, "the power to make an *ex parte* appointment is properly exercised when the receivership is required by some urgent necessity." *Arkansas Louisiana Gas*, 303 F.2d at 132 (citations omitted).³ This "urgent necessity" exception is narrowly circumscribed. The party seeking appointment of a receiver without notice must show that a *bona fide* emergency exists, or that the opposing party has absconded or concealed itself, or that the giving of notice would itself invite imminent loss or destruction of the subject property. *See, e.g., Marion Mortg. Co. v. Edmunds*, 64 F.2d 248, 251 (5th Cir. 1933) ("Even a temporary appointment ought never to be made without notice unless notice is impracticable because the person proceeded against is … in hiding, or there is imminent danger clearly shown of loss or destruction or concealment of property and protection cannot be afforded by a restraining order or in any other way.") (citations omitted); *Federal Home Loan Mortg. Corp. v. Tully Village Edge Apartments*, 1997 WL 10975, *1 (N.D.N.Y. Jan. 2, 1997) ("A party seeking *ex parte* appointment of a receiver must also demonstrate that exigent circumstances exist justifying the appointment on an *ex parte* basis," such as disappearance of the adverse party, a *bona fide* emergency situation, or likelihood that notice would result in loss or destruction of critical evidence or property). A fundamental lesson to be drawn from these authorities is that "counsel in these receivership matters should be extremely careful to avoid the appearance of overzealousness to secure the exercise [of] control, and should give notice of all proceedings … to all persons interested, wherever it is at all possible. Only extreme emergency should excuse failure to do so." *First Nat'l Bank v. Stewart Fruit Co.*, 17 F.2d 621, 623 (N.D. Cal. 1927).

No "extreme emergency" or "urgent necessity" that might justify *ex parte* appointment of a receiver for the Ramada Hotel in Brewton, Alabama, has been shown to exist. Plaintiff's three arguments to the contrary are unpersuasive. First, Fidelity Bank contends that there is a "serious threat to … the condition of the collateral" (doc. 7, ¶ 9) because the Hotel "has been declared a

---

³   *See also Maxwell*, 131 F.2d at 403 ("In the case of 'actual emergency' it may be done."); *Tennessee Pub. Co. v. Carpenter*, 100 F.2d 728, 731-32 (6th Cir. 1938) ("It is of course the general rule that appointments of receivers are not made *ex parte* and without notice. … [In such circumstances,] receivership must be justified by the existence of actual emergency."); *Argonaut Ins. Co. v. Halvanon Ins. Co.*, 545 F. Supp. 21, 25 (S.D.N.Y. 1981) ("While it is clear that a receiver may be appointed upon *ex parte* application when an emergency exists, ordinarily the court will require notice of the application to all parties affected.").

fire hazard" and "the physical structure of the Property is quickly deteriorating due to the poor condition of the roof" (doc. 6, ¶ 2).  But plaintiff points to no evidence that the Hotel is in imminent danger of either burning to the ground or sustaining material additional structural damage during the relatively short time period needed to afford defendants notice and a reasonable opportunity to be heard in response to the request for appointment of a receiver. Plaintiff's own exhibits confirm that the purported "fire hazard" conditions at the Hotel are not new, but were first documented by the Fire Marshal more than six months ago.  (*See* doc. 5, at 96-104.)  As for the structural condition of the Hotel, plaintiff's own filings show that, as of January 28, 2015, defendants had "workmen" performing "renovation" at the Hotel property. (Doc. 4.)  The fact that the owners of the Hotel presently have a work crew on site performing renovations appears to conflict with Fidelity Bank's rhetoric of "manifest danger of loss, destruction or material injury" to the Hotel absent immediate *ex parte* appointment of a receiver to take over the Hotel.  (Doc. 7, ¶ 11.)

Second, Fidelity Bank's numerous references to "public safety" and the need to "protect the welfare of the general public" ring hollow.  Again, plaintiff's own evidence confirms that the Hotel "is closed."  (Doc. 4.)  It is far from obvious how the "fire hazard" status of an unoccupied commercial building undergoing renovations might pose a substantial threat to public safety that rises to the level of "extreme emergency" or "urgent necessity" warranting *ex parte* appointment of a receiver on an emergency basis.

Third, Fidelity Bank speculates that defendant Anand Patel "may have abandoned the premises in the wake of the Cease and Desist Order."  (Doc. 7, ¶ 9.)  Plaintiff identifies no evidence that might lend credence to such conjecture.  The presence of a work crew performing renovations at the Hotel on January 28, 2015 strongly suggests that Patel and Key Hotels have not abandoned the property (since presumably they are the ones who hired, pay, and direct the work crew).  Further, the process server's statement that the workers "did not know the whereabouts of Anand Patel" is far too vague to justify the vast leap of logic that Patel must have absconded, gone into hiding, fled the jurisdiction, or otherwise taken steps to abandon the Hotel or frustrate notice and service of process.  In short, plaintiff's showing is wholly inadequate to

support a finding of "urgent necessity" for *ex parte* litigation of the Motion to Appoint Receiver on a theory that it is impracticable to furnish notice to defendants.[4]

### III.  Conclusion.

In sum, Fidelity Bank has not demonstrated the existence of exigent circumstances, an extreme emergency, or an urgent necessity that might justify hearing its motion for appointment of a receiver to take control of defendants' property without notice to defendants.  Accordingly, the Motion of Fidelity Bank for *Ex Parte* Appointment of Receiver and Request for Expedited Hearing (doc. 6) is **denied**, with leave to renew such motion upon proper notice to defendants.  Any such renewed motion will be taken under submission promptly, albeit only after affording all parties a fair and reasonable opportunity to be heard.

DONE and ORDERED this 2nd day of February, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[4]  A fourth argument to which Fidelity Bank's filings allude (without developing) is that plaintiff is somehow entitled to *ex parte* consideration of its Motion because the relevant Mortgage and Security Agreement includes a provision in which defendants agreed that Fidelity Bank was "entitled to the appointment of a receiver …, without notice, to take possession of and protect the Mortgaged Property."  (Doc. 7, ¶ 5.)  Insofar as Fidelity Bank intended to advance such an argument, it is unavailing.  Again, appointment of a receiver is an inherently equitable remedy committed to the trial court's discretion.  *See, e.g., Waag v. Hamm*, 10 F. Supp.2d 1191, 1193 (D. Colo. 1998) ("receivership is not a positive right," but "is an extraordinary equitable remedy that lies in the discretion of the court, justifiable only in extreme situations"); *Midwest Sav. Ass'n v. Riversbend Associates Partnership*, 724 F. Supp. 661, 662 (D. Minn. 1989) ("the appointment of a receiver is not a matter of positive right but rather lies in the discretion of the court").  A contractual provision is properly considered in the receivership analysis, but it does not supplant the equitable framework established by federal law governing appointment of a receiver.  *See generally Fortress Credit Corp. v. Alarm One, Inc.*, 511 F. Supp.2d 367, 371 (S.D.N.Y. 2007) ("the court's power to appoint a receiver is discretionary in nature and[,] consequently, courts may deny receivership applications regardless of a specific contract provision for such") (citations and internal marks omitted); *Federal Home Loan Mortg. Corp. v. Spark Tarrytown, Inc.*, 813 F. Supp. 234, 235 (S.D.N.Y. 1993) ("contractual, regulatory, or statutory authority for a receivership, whether on notice or on an *ex parte* basis, while necessary to such a grant, is not sufficient"); *Wells Fargo Bank, N.A. v. Tri-5 Realty Management, Inc.*, 2009 WL 2392034, *1 (N.D.N.Y. Aug. 3, 2009) (denying *ex parte* application for appointment of receiver even though mortgage agreement specifically allowed for *ex parte* appointment, where plaintiff failed to "demonstrate sufficient grounds for the appointment of a receiver on an *ex parte* basis").  Plaintiff has not argued, much less demonstrated, otherwise.