**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **FIDELITY BANK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )  **CIVIL ACTION 15-0031-WS-M** |
| | ) |
| **KEY HOTELS OF BREWTON, LLC, *et al.*,** | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

This matter comes before the Court on the Renewed Motion of Fidelity Bank for
Appointment of Receiver and Request for Expedited Hearing (doc. 13).  The Motion has been
briefed and is now ripe for disposition.[1]

**I.     Background.**

The relevant facts appear largely undisputed.  On December 9, 2011, defendants, Key
Hotels of Brewton, LLC, and Anand Patel, entered into a Loan Agreement with plaintiff, Fidelity
Bank, pursuant to which they borrowed the sum of $2,010,000 (the "Loan").  (Doc. 5, ¶ 7 & Exh.
A.)  The stated purpose of the Loan was to refinance existing debt, facilitate a partnership
buyout, and cover closing costs and working capital for a Ramada Hotel located in Brewton,

---

[1]     The Court in its discretion takes the Renewed Motion for Appointment of
Receiver under submission without a hearing.  *See generally Citronelle-Mobile Gathering, Inc.
v. Watkins*, 934 F.2d 1180, 1189 (11th Cir. 1991) ("there is no general requirement of a hearing in
Rule 66, and the court may approve of the appointment of a receiver without a hearing where the
record discloses sufficient facts to warrant it"); *Sterling Sav. Bank v. Citadel Development Co.*,
656 F. Supp.2d 1248, 1260 (D. Or. 2009) ("Here, a formal evidentiary hearing is not required.
Sterling and the Defendants have both received notice that the court is considering the
appointment of a receiver, and both parties have had an opportunity to submit, and have
submitted, evidence to the court."); *United States v. Bonanno Organized Crime Family of La
Cosa Nostra*, 683 F. Supp. 1411, 1452 n.32 (E.D.N.Y. 1988) ("an evidentiary hearing is not
always essential to decide a motion for a preliminary injunction or the appointment of a
receiver").  At any rate, no party has asserted that an evidentiary hearing is warranted to resolve
credibility disputes or supplement the substantial written record.

Alabama (the "Hotel").  Defendant Patel owned the Hotel, and defendant Key Hotels operated the Hotel.  (Patel Aff. (doc. 21, Exh. A), ¶¶ 3-4.)  As collateral for the Loan, Patel executed a Mortgage and Security Agreement in Fidelity's favor.  (Doc. 5, Exh. D.)  The Mortgage and Security Agreement provided that, in the event of a default on the Loan, Fidelity would be entitled to various remedies, including (i) taking possession of, managing and operating the Hotel; (ii) obtaining appointment of a receiver "to take possession of and protect the Mortgaged Property … and collect the rents, issues and profits as well as the fees, charges, accounts, or other payments for the use or occupancy of rooms;" (iii) initiating foreclosure proceedings; and (iv) causing a foreclosure sale of the property.  (*Id.*, ¶ C.2.)  As additional collateral for the Loan, Patel and Key Hotels executed a Security Agreement granting Fidelity a security interest in certain personal property at the Hotel, including equipment, machinery, furniture, fixtures, inventory, and accounts receivable.  (Doc. 5, Exh. C.)

Key Hotels and Patel defaulted under the Loan Agreement, beginning in or around October 2014.  (Doc. 5, ¶ 12; doc. 21, ¶ 6.)  Thanks to a chronically leaking roof that defendants attempted to patch without success throughout 2014, defendants shut down the Hotel in late December 2014 or early January 2015.  (Patel Aff., ¶¶ 5-7.)[2]  The Hotel has remained closed since that date, and no rooms have been rented.  (*Id.*, ¶ 5.)  In a site visit on January 21, 2015, a Fidelity representative documented widespread water damage to the Hotel, including discolored and moldy ceiling tiles and walls.  (Ridgway Aff. (doc. 13, Exh. A), ¶ 3 & Exh. A.)  At present, the Hotel premises are locked at all times, and there is no electricity running to the property.  (Patel Aff., ¶ 14.)  No business is being conducted on the Hotel premises, the property is generating no income, and the Hotel has no employees.  (*Id.*, ¶¶ 12-13.)  Defendants have moved personal property (such as furniture and equipment) subject to Fidelity's security interest to dry areas of the Hotel to protect it from damage.  (*Id.*, ¶ 7.)  Patel, the owner of the Hotel, maintains

---

[2]     Plaintiff's evidence is that the leaky roof was not the only reason for the Hotel's closure; indeed, plaintiff points to an "Order of State Fire Marshal to Cease and Desist" issued on January 22, 2015.  (Doc. 5, ¶ 24 & Exh. F.)  In that document, the Alabama State Fire Marshal cited numerous fire code violations (*i.e.*, inadequate smoke detectors, fire extinguishers, exit lighting, and fire evacuation plans, as well as electrical system defects) that had not been cured, and ordered Key Hotels to cease using the building as a hotel pending abatement of those violations.  (*Id.*)

that he has "done everything reasonably possible to protect the Hotel and personal property inside" at this time. (*Id.*, ¶ 15.)

None of the foregoing facts imply that Key Hotels and Patel have abandoned the Hotel property. To the contrary, defendants' evidence is that Patel is engaged in ongoing discussions / negotiations with nonparty Hilton about a potential franchise agreement that would transform the Hotel into a Hampton Inn. (Patel Aff., ¶ 8.) Patel expects Hilton to decide whether to approve his franchise application later this month; however, he is optimistic that approval will happen because Patel's family "operates other hotels in the Hilton group" and enjoys "a good relationship with Hilton." (*Id.*) Also pending at this time is Patel's application to nonparties Trustmark Bank and Farmers' Exchange Bank for a $4.6 million loan to pay off the Fidelity loan and perform extensive renovations to the Hotel as part of the reflagging process for the potential new Hampton Inn franchise agreement. (*Id.*, ¶ 9.) Defendants expect the loan approval process to take approximately 30 days from Hilton's approval of the Hampton Inn franchise agreement for the Hotel. (*Id.*) Of course, if the Hilton franchise bid is rejected, then defendants' ability to obtain funding to pay off the Fidelity loan and renovate the Hotel would likely be compromised, as well. Defendants' evidentiary submission offers no answer to the "what if" question concerning Hilton franchise approval, and no Plan B in the event such approval is denied.

In lieu of allowing the franchise / loan process to play out to its anticipated conclusion over the next several weeks, Fidelity now petitions this Court for appointment of a receiver on an expedited basis. Fidelity's position is that upon appointment of a receiver, Fidelity "expects to act in conjunction with the Receiver to promptly seek a Court ordered sale of the Hotel under 28 U.S.C. §§ 2001 and 2002." (Doc. 23, ¶ 6.) It does not appear that Fidelity is interested in having the receiver manage, operate, preserve, modify or oversee the Hotel premises in any meaningful respect. In fact, plaintiff does not identify any role for the proposed receiver other than working under the supervision of this Court to effectuate the prompt, orderly liquidation of the Hotel property.

## II.     Analysis.

"A district court's appointment of a receiver … is an extraordinary equitable remedy." *United States v. Bradley*, 644 F.3d 1213, 1310 (11th Cir. 2011) (citation and internal quotation marks omitted); *see also Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009) ("Under federal law, appointing a receiver is an extraordinary equitable remedy, which should be

applied with caution.") (citation and internal quotation marks omitted).  Federal appellate courts have observed that this remedy "should be employed with the utmost caution and is justified only where there is a clear necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties."  *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012); *see also Rosen v. Siegel*, 106 F.3d 28, 34 (2nd Cir. 1997) ("[T]he appointment of a receiver is considered to be an extraordinary remedy, and … should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property.") (citations omitted); *Skirvin v. Mesta*, 141 F.2d 668, 673 (10th Cir. 1944) ("A court should be cautious and circumspect in the exertion of the [receivership] remedy because perversion or abuse may work great hardship.").

Case authorities make clear that "the district court has broad discretion in appointing a receiver, that it may consider a host of relevant factors, and that no one factor is dispositive." *Canada Life*, 563 F.3d at 845.  "[A]lthough no precise formula exists for determining when a court should resort to appointing a receiver, several factors should be considered: (1) whether fraudulent activity has or will occur, (2) the validity of the claim, (3) the danger that property will be lost or diminished in value, (4) inadequacy of legal remedies, (5) availability of less severe equitable remedy, and (6) the probability that a receiver may do more harm than good." *Clough Marketing Services, Inc. v. Main Line Corp.*, 2007 WL 496739, *2 (N.D. Ga. Feb. 13, 2007) (citations omitted); *see also PNC Bank, N.A. v. Presbyterian Retirement Corp.*, 2014 WL 6065778, *5 (S.D. Ala. Nov. 13, 2014) (reciting similar non-exhaustive list of factors, as well as considerations like "the balance of harms as between the party seeking appointment of a receiver and those opposing it" and "the possibility of irreparable injury to plaintiff's interest in the property").  Of course, "[t]here is no rote 'checklist' of mandatory factors or criteria to be applied; rather, federal courts weigh all relevant considerations." *Presbyterian Retirement*, 2014 WL 6065778, at *5 (footnote omitted).

As grounds for its Renewed Motion for Appointment of Receiver, Fidelity relies heavily on the physical condition of the Hotel, suggesting that it has "deteriorated so as to become largely untenable" and that defendants are incapable of "increasing revenues to cover the operational expenses of the Hotel and undertake the now substantial capital outlay necessary to restore the property."  (Doc. 13, ¶ 6.)  Fidelity advocates that a receiver be appointed immediately because "the Hotel property continues to decline in value with each passing

rainfall." (Doc. 23, ¶ 4.)  In Fidelity's view, "[e]very time the rains fall, the building and its contents become less valuable." (*Id.*, ¶ 8.)  Fidelity also expresses concern that "there is no guarantee that just because the Hotel is 'locked' … there will be no vandalism or other damage to the property." (*Id.*)

On the particular facts and circumstances presented here, the Court is not persuaded that the extraordinary equitable remedy of appointment of a receiver is appropriate.  To be sure, Fidelity appears to have a compelling (and uncontested) claim that Key Hotels and Patel are in default under the applicable loan documents.  Plaintiff has not shown, however, that there is a clear necessity for appointment of a receiver to protect its interest in the Hotel, that less drastic remedies are unavailable or inadequate, or that the benefits of receivership would outweigh its burdens.  The Court will address each of these considerations in turn.

First, there is no doubt that the Hotel is in poor physical condition.  Its roof has leaked for many months, causing considerable mold and water damage inside the Hotel.  There may or may not be some marginal, incremental damage to the Hotel each time it rains, given the inadequacy of the property's roof; however, this will be so even if a receiver is appointed.  Fidelity does not suggest that a receiver would oversee roof repairs or would otherwise do anything to improve the property's physical condition.  Nor does Fidelity contravene defendants' showing that Patel is acting as a responsible property owner who has taken reasonable precautions to protect the Hotel from further waste and deterioration by (i) closing the Hotel, (ii) locking the Hotel, (iii) cutting off electricity to the Hotel, (iv) moving personal property (furniture, equipment, and so on) to lower, dry areas in the Hotel to protect it, (v) maintaining insurance coverage on the Hotel and its contents for fire and casualty damage, and (vi) otherwise taking all reasonably available measures to safeguard the Hotel and its contents.  While plaintiff is sharply critical of what it deems defendants' past conduct to "waste the Hotel" (doc. 23, ¶ 3), the request for appointment of a receiver looks forward, not backward.  Fidelity does not show that Patel is not acting diligently or responsibly today, much less that a receiver would do anything differently than Patel to preserve the collateral.  Simply stated, the facts before the Court do not support a conclusion that appointment of a receiver to manage and oversee the Hotel is necessary to safeguard and protect Fidelity's interest in such property.

Second, defendants make the point (to which Fidelity does not respond) that Fidelity has other, less drastic remedies available to it.  In particular, defendants point out that Fidelity holds

a valid mortgage as to the Hotel and a security interest in its contents, and that Fidelity is therefore entitled to "foreclose at any time it chooses." (Doc. 21, ¶ 22.) Defendant has not attempted to show that its foreclosure rights as mortgagee of the Hotel and secured party as to the contents would be inadequate to protect its interests, nor has it explained its decision to bypass those remedies in favor of the more extreme remedy of appointment of a receiver.[3]

Third, the Court is concerned that appointing a receiver at this time would do more harm than good. Defendants' evidence is that Patel is working diligently and in good faith with both a hotel chain (Hilton) and lenders (Trustmark Bank, Farmers Exchange Bank) to reflag the Hotel as a Hampton Inn and to obtain necessary financing to overhaul the property and pay back Fidelity. There is no indication that Patel's activities are a futile charade or a stall tactic, or that they are otherwise not *bona fide*. It is impossible to know, of course, whether those efforts will pan out. What we do know, however, is that rushing in to appoint a receiver now will almost certainly undermine (and perhaps even negate) Patel's attempts to restore the Hotel and to make Fidelity whole. Common sense informs that hotel groups and lenders alike would be more inclined to steer clear of a hotel property in receivership (particularly one being positioned for immediate liquidation, as Fidelity contemplates) than one that is not. The harm to defendants of appointing a receiver now could be catastrophic, derailing Patel's good-faith plans and forcing a sale at what would likely be a much lower price than the Hotel value would be if Patel successfully reflagged and renovated it. By contrast, the harm to plaintiff of waiting a short time to see if Patel's reflagging and refinancing efforts are successful appears minimal. Once again, all reasonably available steps to protect Fidelity's collateral in the interim appear to have been taken. The Court is not convinced that whatever marginal additional damage may occur from water intrusion in the Hotel during the next few weeks is sufficiently severe to warrant the draconian step of wrenching the Hotel away from Patel, placing it in the hands of a receiver for

---

[3] At most, Fidelity makes a showing the Loan is the subject of a 90% guarantee by the Small Business Administration. (Ridgway Aff. II (doc. 23, Exh. A), ¶ 5.) According to plaintiff's evidence, Fidelity cannot obtain payment of that guarantee unless it "safeguard[s] and efficiently liquidate[s] any collateral subject to the loan." (*Id.*) Plaintiff does not explain, however, why it believes the receivership mechanism (rather than foreclosure) is necessary to place it in compliance with Small Business Association guidelines and requirements for payment of the guarantee.

summary liquidation at pennies on the dollar, and scuttling Patel's diligent efforts to fix this mess.

### III.   Conclusion.

By all appearances, what we have here is a fundamental disagreement between Fidelity and Patel about how best to maximize the Hotel's value going forward.  Fidelity wants the property to be liquidated immediately (no doubt at an enormous discount) so that it can collect the 90% SBA guarantee on the loan.  Patel wants to make the Hotel prosper again, leveraging his family's favorable business relationship with Hilton to franchise the property as a Hampton Inn and parlaying that new franchise agreement into financing for renovations and to pay off the Fidelity loan.  The Court does not know and cannot handicap Patel's odds of success.  But Fidelity has not shown that it will incur more than *de minimis* harm if the Court declines to rush to judgment by precipitously appointing a receiver and effectively poisoning Patel's reflagging / refinancing efforts in midstream.  By contrast, if Patel succeeds, the result will be an unambiguous "win-win" outcome for all involved, including Fidelity.

That said, the Court is cognizant of, and sympathetic to, Fidelity's concern that "the Hotel will then languish in 'no man's land'" (doc. 23, ¶ 5) indefinitely while the franchise and financing negotiations drag on, all to Fidelity's detriment and prejudice.  The Court has no intention of allowing such a scenario to play out.  Patel will be given an opportunity to make this right, but not an open-ended one.  The Renewed Motion for Appointment of Receiver (doc. 13) will be **held in abeyance** pending a status report from defendants, which must be filed on or before **May 11, 2015**.  This status report must, at a minimum, set forth in detail the present status of the franchise approval process and the loan applications, and must also demonstrate that Patel has acted diligently and in good faith to keep those processes moving forward.  Upon receipt of that status report, the Court will reevaluate plaintiff's Renewed Motion.

DONE and ORDERED this 13th day of April, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE