IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **FIDELITY BANK,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 15-0031-WS-M |
| ) | |
| **KEY HOTELS OF BREWTON, LLC,** *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This matter comes before the Court on plaintiff's Notice of Continuing Default (doc. 55) and Motion to Establish Sale Procedures (doc. 48).

**I.      Nature and Procedural History of this Action.**

Plaintiff, Fidelity Bank, brought this action against defendants, Key Hotels of Brewton, LLC and Anand Patel, to enforce a loan agreement and security interest in a hotel and other property. The First Amended Complaint alleged the following pertinent facts, among others: (i) Key Hotels and Patel executed a Loan Agreement in favor of Fidelity Bank on or about December 9, 2011, along with a Note in the amount of $2,010,000 (doc. 5, ¶¶ 7-8); (ii) to secure repayment of the Loan Agreement and Note, Key Hotels and Patel also executed a Security Agreement and a "Mortgage and Security Agreement" in favor of Fidelity for a hotel property and personal property located at 1115 Douglas Avenue, Brewton, Alabama (*id.*, ¶¶ 9-10); (iii) defendants defaulted on their repayment obligations to Fidelity Bank under the Loan Agreement and Note in October 2014, and likewise failed to maintain the collateral (*i.e.*, the hotel property) in the manner required by the subject agreements (*id.*, ¶ 12); and (iv) after notice, defendants failed to cure the defaults, resulting in a balance due on the Loan Agreement and Note of $1,885,032.54 in principal and interest as of January 13, 2015 (*id.*, ¶ 13).

Based on these and other well-pleaded factual allegations, Fidelity Bank asserted state-law causes of action against defendants for breach of the Note, detinue, and appointment of a receiver to take possession and control of the hotel and personal property. The Amended

Complaint demanded relief in the form of a money judgment in the amount of $1,885,032.54, plus attorney's fees, interest and costs; possession of the personal property; and equitable relief in the form of appointment of a receiver to manage, control and ultimately dispose of the property and other assets.[1]

Initially, defendants appeared in this action by and through counsel, at which time they filed an Answer (doc. 20) and generally appeared responsive to their legal obligations in this litigation.  In March 2015, defendants prevailed upon the undersigned to refrain from appointing a receiver for the hotel property on an expedited basis.  In particular, defendant Patel submitted a sworn Affidavit (doc. 21-1) dated March 27, 2015, in which he represented to the Court that he was in negotiations with Hilton to enter into a new franchise agreement that would transform the hotel into a Hampton Inn, that he had applied for a loan with multiple banks to renovate the hotel, and that a decision on the franchise agreement was expected within 30 days.  On that basis, the undersigned entered an Order (doc. 24) on April 13, 2015, affording defendants a limited amount of time to explore such a "win-win" proposition to maximize the hotel property's value and pay off the existing lender (Fidelity Bank), without imposing the draconian and disfavored remedy of receivership.  The status quo was maintained a bit longer when defendants represented to the Court on May 11, 2015, that issuance of Hilton's letter of approval was expected "at any time." (Doc. 25, at 2.)  In a status report filed on June 17, 2015, defendants continued to portray everything as being on track for Hilton approval of the new franchise agreement, with a loan and accompanying payoff of the Fidelity Bank Note to follow shortly thereafter.  (*See* doc. 31.)

On July 29, 2015, however, defendants abruptly dropped a bombshell on this Court by announcing that the Hilton proposal had been scrapped altogether because defendants had concluded that the construction / renovation plans for the property "were not economical." (Doc. 38, at 1.)  On that basis, defendants indicated that they had embarked on franchise discussions with a different hotel chain (Wyndham Hotel Group) for a different hotel with different construction plans and different funding requirements.  In the more than four months since

---

[1] Notwithstanding the purely state-law nature of the claims asserted by Fidelity Bank in this action, federal subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332, inasmuch as the well-pleaded allegations of the First Amended Complaint confirm that there is complete diversity of citizenship between plaintiff and defendants, and that the amount in controversy greatly exceeds the $75,000 jurisdictional threshold.

defendants had appeared in this case, the July 29 filing marked the first time they ever intimated to this Court that approval and finalization of the Hilton plan and accompanying refinancing loan were not imminent.[2]

Things deteriorated quickly thereafter. A judicial directive that the parties work together in good faith to explore a potential business resolution to their dispute proved futile, as plaintiff reported that "[n]o material progress has been made" in defendants' efforts to obtain a new franchise agreement, and that defendants "were either unwilling or unable to make any offer whatsoever to Fidelity" to resolve this dispute. (Doc. 41, at 2.) On September 10, 2015, defendants' counsel sought leave to withdraw from the representation on the ground that "Defendants have failed to cooperate with counsel." (Doc. 46.) A September 17 Order granted counsel's request to withdraw and ordered defendants to notify the Court in writing as to the identity of their new counsel (or, in defendant Patel's case, whether he intended to proceed *pro se*) on or before October 8, 2015. (Doc. 49.) That Order included a stern admonition in bold type, as follows: "**Defendants are cautioned that failure to comply with this Order in a timely manner may result in entry of default or other sanctions against them upon motion by plaintiff.**" (*Id.* at 3.) When defendants failed to respond to the September 17 Order, at plaintiff's request, the undersigned entered another Order (doc. 54) on October 26, 2015, stating that "Defendants are **ordered**, on or before **November 9, 2015**, to **show cause** why default judgment should not be entered against them for their willful noncompliance with the September 17 Order." (Doc. 54, at 2.)[3] Once again, defendants chose to do nothing. They have remained silent. They have disregarded yet another court order and another deadline in this case.

---

[2]  The unfortunate fact of the matter is that, notwithstanding defendants' grandiose pronouncements and predictions of imminent franchise agreements and loans that would allow them to reconfigure and reopen the hotel property while paying off the Note to Fidelity Bank, defendants appear no closer to remediating the hotel property today than they were back in January 2015 when this lawsuit commenced. There are many possible explanations for this state of affairs (*e.g.*, deliberate misstatements as to defendants' prospects for renovating the hotel property, unreasonable optimism by defendants as to such prospects), none of which portray defendants in a particularly favorable light or suggest that they were reasonably forthcoming with the Court as to the true status of their efforts to rebrand, repair, and reopen the hotel while fulfilling their financial obligations to Fidelity Bank.

[3]  To make absolutely certain that defendants would not be confused by any legal jargon, the October 26 Order translated this requirement into plain English as follows: "Unless (Continued)

**II.     Entry of Default as Appropriate Sanction Against Defendants.**

The law is clear in this Circuit that "[a] district court need not tolerate defiance of reasonable orders." *Equity Lifestyle Properties, Inc. v. Florida Mowing and Landscape Service, Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009). "A court may impose sanctions for litigation misconduct under its inherent power" upon a finding of bad faith. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009); *see also Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002) ("Courts have the inherent authority to control the proceedings before them, which includes the authority to impose 'reasonable and appropriate' sanctions."). "A party demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006) (citation and internal marks omitted). That is precisely what has occurred here. Despite being duly cautioned about the importance of timely compliance and the dire consequences of noncompliance, Key Hotels and Patel disregarded unambiguous court orders dated September 17, 2015 and October 26, 2015. Prior to defying such judicial directives, defendants displayed a propensity for uncooperativeness (*i.e.*, failing to work with their own lawyers, refusing to engage in good-faith negotiations with plaintiff to explore business resolutions to this dispute) and contumacious foot-dragging (*i.e.*, a series of assurances to the Court that approval of a new franchise agreement and loan for hotel were imminent, followed by a jarring, sudden about-face that defendants were unilaterally abandoning the project because they deemed it "not economical").

In effect, then, Key Hotels and Patel have stalled all meaningful progress in this case for nearly ten months. They have failed and refused to work with their own attorneys. They have disregarded multiple court orders, despite clear warning as to the consequences of such a course of action. They have, at a minimum, been less than candid in court filings about their intentions

---

defendants submit written filings [on] or before the deadline that (i) provide a satisfactory explanation for their failure to comply with the September 17 Order in a timely manner, (ii) comply with that Order in full, and (iii) evince an intent to participate in this matter in a conscientious and diligent manner henceforth, the Court will exercise its inherent power to enter a default against them …. If defendants wish to be heard and to defend their interests in this litigation, the time is now. Defendants should expect no further lenience based on their unrepresented status." (Doc. 54, at 2.)

and business prospects for the hotel property. Taken in the aggregate, these circumstances overwhelmingly support a finding of bad faith, so as to unlock the Court's inherent power to sanction. *See Peer v. Lewis*, 606 F.3d 1306, 1316 (11th Cir. 2010) ("The key to unlocking a court's inherent power is a finding of bad faith.") (citation omitted). The only remaining question is what form the sanction should take.

The Court understands, of course, that default judgments are disfavored. *See, e.g., In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003) ("there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor"); *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985) (opining that default judgment "is too harsh except in extreme circumstances" and that "we must respect the usual preference that cases be heard on the merits rather than resorting to sanctions that deprive a litigant of his day in court") (citations omitted). Indeed, the Eleventh Circuit has opined that "[t]he severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders." *Sunshine Jr.*, 456 F.3d at 1306 (citation and internal quotation marks omitted). Notwithstanding its disfavored status in the law, the sanction of default judgment may be appropriate "when the adversary process has been halted because of an essentially unresponsive party." *Atlantic Recording Corp. v. Ellison*, 506 F. Supp.2d 1022, 1025-26 (S.D. Ala. 2007) (citation omitted).[4]

Upon careful consideration, the Court makes specific findings that Key Hotels and Patel have conducted themselves in bad faith via their pattern of unreasonable delay, contumacious conduct, and defiance of reasonable court orders. Despite being given multiple opportunities to

---

[4] *See also Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1338 (11th Cir. 2014) (recognizing that Rule 55(a) mandates entry of default so that "the adversary process [will not] be halted because of an essentially unresponsive party") (citation omitted); *In re Knight*, 833 F.2d 1515, 1516 (11th Cir. 1987) ("Where a party offers no good reason for the late filing of its answer, entry of default judgment against that party is appropriate."); *Bonanza Int'l, Inc. v. Corceller*, 480 F.2d 613, 614 (5th Cir. 1973) ("There is evidence, moreover, that defendant refused to obey the Court's orders, and such action constitutes sufficient grounds for a default judgment."); *Carpenters Labor–Management Pension Fund v. Freeman–Carder LLC*, 498 F.Supp.2d 237, 240 (D.D.C. 2007) ("[a] court has the power to enter default judgment when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics," such as where "the adversary process has been halted because of an essentially unresponsive party") (citations omitted).

bring themselves into compliance, and despite being cautioned in layman's terms about the consequences of failing to do so, defendants have elected to continue disregarding court orders. In light of these circumstances, the Court concludes that defendants' disobedience has been willful and in bad faith, and that lesser sanctions will not suffice. Accordingly, the undersigned exercises his inherent authority to impose the sanction of entering default judgment against defendants.

### III. Plaintiff's Motion to Establish Sale Procedures.

Back on September 10, 2015, Fidelity Bank filed and served on defendants' then-counsel a Motion to Establish Sale Procedures (doc. 48). In that Motion, Fidelity Bank proposed that this Court approve a private auctioneer of plaintiff's choosing to conduct a public auction of the hotel property at issue in this litigation. Defendants were on notice of that Motion, not only through service of it on their then-attorney of record but also through the October 26 Order, which notified defendants that if they failed to show cause why default judgment should not be entered, this Court would "proceed to take up plaintiff's motion to have the hotel property auctioned." (Doc. 54, at 2.) Through their non-responsiveness, as documented *supra*, defendants have chosen not to be heard as to that Motion to Establish Sale Procedures.

Because defendants' default is effectively an admission of all well-pleaded factual allegations in the First Amended Complaint, the Court readily finds that Fidelity Bank possesses a contractual right to have the hotel property sold at auction. Again, the First Amended Complaint pleads (and defendants, via their default, have admitted) that Key Hotels and Patel executed a "Mortgage and Security Agreement" in favor of Fidelity Bank for the hotel property located at 1115 Douglas Avenue in Brewton, Alabama (the "Hotel Property"). (Doc. 5, ¶ 10.) That Mortgage and Security Agreement – a copy of which is appended to the First Amended Complaint – reflects that defendants' nonpayment of amounts due under the Note constituted a default, and that in the event of default Fidelity Bank "may elect to cause the Mortgaged Property or any part thereof to be sold as follows: … At the foreclosure sale of the Mortgaged Property which is real property, the Mortgaged Property … shall be sold at public auction to the highest bidder …." (Doc. 5, Exh. D, at §§ C.1(a), C.2(d)(iii).) Simply put, then, defendants entered into an agreement that gave Fidelity Bank the contractual right to sell the Hotel Property at a public auction if defendants defaulted on their repayment obligations under the Note and failed to cure. The well-pleaded factual allegations in the First Amended Complaint, taken as

true in the wake of defendants' default in this litigation, confirm that this is exactly what happened here. As such, Fidelity Bank is acting within its contractual rights by seeking public auction of the Hotel Property.

In terms of the mechanics of the proposed auction, the applicable federal statute confers considerable discretion upon district courts.[5] In accordance with the procedures proposed by Fidelity Bank, which are fair, reasonable and comport with the terms of the Mortgage and Security Agreement and governing law, the Court hereby establishes the following method and procedure for conducting the judicial sale of the Hotel Property:

1. The Court approves the retention of Rowell Auctions, Inc. as auctioneer. Rowell will be paid a 10% buyer's premium commission for its services, plus reimbursement of actual expenses. The terms of retention are reflected in the "Real Estate Auction Services Listing Agreement" attached as Exhibit A to document 48 in the court file. The Court approves the Listing Agreement and payment of Rowell out of the proceeds of sale; however, in the event of conflict or inconsistency between the terms of the Listing Agreement and this Order, the Order controls. The Court retains jurisdiction to resolve any disputes between the parties and/or Rowell.

2. The auction will cover the Hotel Property located at 1115 Douglas Avenue, Brewton, Alabama 36426, whose legal description is set forth below, together with all fixtures, furnishings and equipment at that location:

   Commencing at a point where the West right-of-way line on Douglas Avenue (U.S. Highway #31) Intersects the South line of the Northwest Quarter of Section 21, Township 2 North, Range 10 East; Thence run North along the West line of Douglas Avenue a distance of 475 feet, More or less, and to a point which is the Northeast corner of the certain property once owned by W.K. Holt and wife, Nell R. Holt; Thence continue North and along Douglas Avenue a distance of 120 feet to make or form a starting point;

---

[5]  Indeed, the relevant statute provides, in pertinent part, that "[a]ny realty or interest therein sold under any order or decree of any court of the United States shall be sold … at public sale at the courthouse of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs. **Such sale shall be upon such terms and conditions as the court directs**." 28 U.S.C. § 2001(a) (emphasis added).

>   thence run West a distance of 245 feet to a point; thence run South a distance of 120 feet to a point; thence run West a distance of 100 feet to a point; thence run North a distance of 407.7 feet, more or less, to a point on the South Boundary line of Smith lane; thence run East a distance of 345 feet, more or less along the South Boundary of Smith Lane to the West right-of-way of Douglas Avenue; thence run South a distance of 287.7 feet to the Point of Beginning.
>
>   Less and except the following described property:
>
>   Commence at the Southeast corner of the Southwest quarter of the Northwest quarter (SE Cor. of SW1/4 of NW1/4) of Section (21), Township Two (2) North, Range Ten (Ten) East, Escambia County, Alabama, Said Corner Being the Point of intersection of the South line of the Northwest quarter (NW 1/4) of said section Twenty-one (21) with the West right-of-way of U.S. Highway 31 (66' R/W); thence run North 01'11'23" west along said right-of-way line for 475.00 feet; Thence run South 89'27'22" West for 245.00 feet for the Point of Beginning; thence continue the last course run South 89'27'22" West for 96.46 feet; thence run South 00'28'20" East for 1.02 feet to a fence line; thence run South 89'12'09" East along said fence line for 96.52 feet; Thence run North 01'11'23" West for 3.28 feet to the Point of Beginning.

3.  Pursuant to 28 U.S.C. § 2002, notice of the sale must be published once a week for four consecutive weeks prior to the sale in a newspaper of general circulation in Escambia County, Alabama, the location of the Hotel Property. Fidelity Bank shall be responsible for publication of such notice and shall bear the expense of publication. The sale shall be "where is, as is." As part of the sale process, Rowell Auctions must post appropriate signage promoting the sale, circulate marketing materials to prospective buyers, post the sale on its website, assist potential buyers with inspections of the Hotel Property, and take other reasonable appropriate steps to market and promote the auction. Such auction will be absolute with no reserves. However, Fidelity Bank retains the right to credit bid, and any credit bid made by Fidelity Bank shall include a sufficient cash component to cover Rowell's fees and expenses. The property may be offered first in parcels and then en masse. The sale must be conducted according to customary and commercially reasonable practices; however, subject to those constraints, Rowell shall have discretion in selecting the manner of conducting the auction. Rowell may, in its discretion, solicit and accept electronic bids over the

>   Internet. To the extent that Key Hotels or Patel may bid on the property, Rowell may require cash deposits in an amount reasonably deemed appropriate to provide adequate assurances of that bidder's ability to close. In order to allow sufficient time for the marketing and advertising process, at least 60 days will be required from the date of this order approving sale procedures. Upon completion of the sale, Rowell shall file a report of sale with the Clerk of Court.
>
> 4.   The form of notice of the auction must be approved by the Court prior to advertisement. The Court approves the form "Notice of Auction Sale" attached as Exhibit B to document 48, with the following modifications: (i) the first paragraph must list a more complete, precise location of the auction than "1115 Douglas Avenue;" and (ii) the reference to Lawrence B. Voit on page 2 must be deleted, given that Attorney Voit no longer represents defendants in this action, and replaced with the name and address of defendant Patel. This Notice shall be in addition to the marketing efforts of Rowell.
>
> 5.   Under the circumstances, the Court concludes that it is appropriate for the auction to be free and clear of all liens and encumbrances, with any such liens or claims to attach to the sale proceeds.[6] No later than the first publication of Notice of Auction Sale, Fidelity Bank shall furnish notice of the sale to any lienholders of record and shall serve upon each such lienholder (via first-class U.S. Mail, postage prepaid) copies of the Notice of Auction Sale, the Motion to Establish Sale Procedures, and this Order. If the Internal Revenue Service is a lienholder, then Fidelity Bank must provide notice to that agency in a time and manner that comports with all applicable laws. Fidelity Bank must file certificates of service with the Clerk of Court reflecting the time, manner and method of service upon any and all lienholders of record. Based on the information before the Court at this time, Fidelity Bank appears to be in a first priority position, and no excess sale proceeds are anticipated to be available to pay liens of any other creditors that

---

[6]   The Court notes that a recent title report for the Hotel Property reflects that the only encumbrances of record on such property are Fidelity Bank's first mortgage and the current ad valorem taxes due. (Doc. 52, Exh. A.)

might exist.  To provide adequate protection to unknown lienholders, the Court finds that approval of the auction free and clear of liens is in the best interests of all parties, inasmuch as a sale on such terms will encourage bidders to offer the highest and best price while protecting any potential lienholders by ordering that their claims will attach to the sale proceeds, pending further determination by the Court.

6. Defendants are **ordered** to cooperate with Rowell Auctions and to execute such deeds, bills of sale or other documents as may be required to effectuate an auction sale.  Should defendants fail or refuse to execute any such documents of conveyance required to complete the auction, the Clerk of Court is authorized to so act upon request of Rowell Auctions.

7. Upon closing of the sale, which should take no more than 45 days following the auction, Rowell shall file a report of sale with the Clerk of Court.  The net proceeds of sale shall be deposited with the Clerk of Court, pending order of disbursement by this Court.  Upon the filing of a report of sale and deposit of sale proceeds, the Court will schedule a show cause hearing and set deadlines for the filing of objections to disbursement of such net proceeds of sale to Fidelity Bank.  If no objections are timely filed, the Court may cancel the hearing and enter an order of disbursement based solely on the written record.

IV. **Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1. Based on the litigation misconduct detailed herein, the Court exercises its inherent powers to impose the sanction of **default** against defendants, Key Hotels of Brewton, LLC and Anand Patel.  "A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp.*, 561 F.3d at 1307 (citation and internal quotation marks omitted).

2. Notwithstanding the default by Key Hotels and Patel, the issue of damages remains unresolved.[7] Plaintiff is **ordered**, on or before **December 7, 2015**, to file such affidavits, exhibits and other materials, together with a legal memorandum, that it deems sufficient both to document and to explain the amount and character of the damages sought, so as to prevent the requested damages award from being either uncertain or speculative. Plaintiff must serve a complete copy of these damages submissions on defendants at their address of record. Defendants will be allowed until **December 21, 2015** to be heard (solely as to plaintiff's evidentiary showing on damages, inasmuch as the default precludes them from contesting the merits of plaintiffs' claims), after which the issue of damages will be taken under submission. Default judgment will be entered against Key Hotels of Brewton, LLC and Anand Patel at such time as damages determinations have been made on the record thus established.

3. Plaintiff's Motion to Establish Sale Procedures (doc. 48), as amended (doc. 52), is **granted**. Sale procedures for the forthcoming public auction of the Hotel Property are as set forth herein.

4. The Clerk of Court is directed to mail a copy of this Order to each defendant at his or its address of record.

DONE and ORDERED this 16th day of November, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[7] *See, e.g., PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp.2d 1287, 1292 (S.D. Ala. 2010) ("While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages.") (citation omitted). A judicial determination of damages may be made without a hearing "when the district court already has a wealth of evidence … such that any additional evidence would be truly unnecessary to a fully formed determination of damages." *Id.* at 1292 n.9.